**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHERMEKA ARTHUR, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.: 14-1057(RC) |
| | : | |
| v. | : | Re Document Nos.: 8, 10 |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

In this action, Shermeka Arthur and her minor child Z.A. seek from the District of Columbia an award of attorneys' fees incurred in pursuing an administrative claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Arthur and Z.A. have moved for summary judgment on the basis that they were the prevailing parties in the administrative proceedings and that their requested fees are reasonable. The District disputes both contentions in its cross-motion for summary judgment and opposition. Because the Court concludes that the undisputed record evidence shows that Arthur and Z.A. were prevailing parties and that their requested fees are reasonable, the Court grants their motion for summary judgment and denies the District's cross-motion.

### II. FACTUAL BACKGROUND

In December 2013, Arthur filed a due process complaint against the District of Columbia Public Schools ("DCPS"). *See generally* Admin. Due Process Compl., Pls.' Ex. 1, ECF No. 8-2.

In the due process complaint, Arthur alleged that an October 2013 individualized education program ("IEP") created for her son Z.A. inappropriately reduced specialized instruction and speech and language services mandated by a prior November 2012 IEP, thereby denying Z.A. a free appropriate public education, in violation of the IDEA. *See id.* ¶¶ 16–21. By way of relief, Arthur sought a revision in Z.A.'s IEP to increase specialized instruction hours to no less than 20 hours per week and speech services to no less than 240 minutes per month. *See id.* at 7. The due process complaint also enumerated thirteen other requests for relief, including a speech and language evaluation conducted by DCPS, a meeting convened by DCPS to revise the IEP, compensatory education, and a finding that DCPS denied Z.A. a free appropriate public education. *See id.* at 7–9.

Subsequently, an impartial hearing officer scheduled a due process hearing for February 2014. *See* Consent Order 2, Pls.' Ex. 2, ECF No. 8-2. Shortly before the hearing was scheduled to take place, the parties informed the hearing officer that they had reached a resolution, to be documented in a consent order. *Id.* That same day, the impartial hearing officer issued the consent order, which "[b]ased upon the parties' agreement," "*ordered*" that by February 21, 2014, DCPS "shall" amend Z.A.'s IEP "to restore the quantities of specialized instruction and related services" required by the November 2012 IEP, "*i.e.*, (a) 12.5 hours per week of specialized instruction . . . and (b) 240 minutes per month of Speech-Language pathology services." *Id.* at 2–3. The consent order noted that DCPS was "not required to convene the Student's IEP Team to make the amendments" mandated, and granted no other relief requested in the due process complaint. *Id.* Lastly, the order dismissed the due process complaint with prejudice and without any right of appeal. *See id.* at 3.

In June 2014, Arthur and Z.A. ("Plaintiffs") filed this action to recover attorneys' fees incurred in connection with the administrative proceedings resolved by the consent order. *See generally* Compl., ECF No. 1. Plaintiffs moved for summary judgment, and the District subsequently filed a cross-motion for summary judgment and opposition. *See* Pls.' Mot. Summ. J., ECF No. 8; Def.'s Cross-Mot. Summ. J. & Opp'n, ECF No. 10. Both motions are now ripe.

### III.  ANALYSIS

#### A.  Legal Standards

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In an action for attorneys' fees following an administrative proceeding under the IDEA, the "party moving for summary judgment on legal fees must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent and hourly rate." *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 99 (D.D.C. 2014).

#### B.  Prevailing Party

In their cross-motions for summary judgment, the parties primarily dispute whether Plaintiffs are "prevailing parties" within the meaning of the IDEA, such that they are entitled to an award of reasonable attorneys' fees for their success in the administrative proceedings. 20 U.S.C. § 1415(i)(3)(B)(i)(I). For the reasons given below, the Court concludes that they are.

Enacted in 1975, the IDEA seeks to ensure that children with disabilities can enjoy a "free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). To this end, the statute provides a range of "procedural safeguards," *id.* § 1415(a), including a complaint procedure and right to an "impartial due process hearing" before the local educational agency, *id.* § 1415(f)(1). Moreover, "[i]n any action or proceeding brought under" the IDEA's procedural safeguard provisions, federal district courts "may award reasonable attorneys' fees" to "a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I); *see also Alegria v. District of Columbia*, 391 F.3d 262, 263 (D.C. Cir. 2004) (summarizing IDEA procedures).

The term "prevailing party" is a "legal term of art," whose meaning the Supreme Court elucidated in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*. 532 U.S. 598, 603 (2001). The *Buckhannon* Court held that prevailing party status requires "a court-ordered change in the legal relationship between the plaintiff and the defendant." *Id.* at 604 (internal alterations and quotation marks omitted). This change can result from "judgments on the merits" or "settlement agreements enforced through a consent decree." *Id.* By the same token, the Court rejected the so-called "catalyst theory," under which a plaintiff can qualify as a prevailing party if his lawsuit merely brings about the result desired. *Id.* at 605. A defendant's "voluntary change in conduct," the Court explained, lacks the requisite "judicial *imprimatur*." *Id.* Similarly, "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees"; indeed, federal courts are without jurisdiction to enforce a private settlement agreement unless its terms "are incorporated into [an] order of dismissal." *Id.* at 604 n.7.

The principles articulated in *Buckhannon* govern "prevailing party" determinations under the IDEA's fee-shifting provision. *See Alegria*, 391 F.3d at 263–64 (noting that *Buckhannon*

"spoke broadly with regard to fee-shifting statutes" and concluding that appellants did not "overcome the presumption that *Buckhannon* applies"). The D.C. Circuit, moreover, has distilled from *Buckhannon* a three-part test and applied this test in an IDEA prevailing party analysis: "(1) [T]here must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (internal quotation marks omitted) (citing *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003)).

The Second Circuit, recognizing that *Buckhannon*'s discussion of prevailing parties in *judicial* proceedings "does not map perfectly" onto the IDEA's administrative context, applied *Buckhannon* by deriving the concept of "administrative imprimatur." *A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 75–76 (2d Cir. 2005).[1] In *A.R.*, the court explained that an impartial hearing officer's decision on the merits, while not "judicial," still gives rise to prevailing party status because it changes "the legal relationship between the parties" and is "enforceable" either by the hearing officer or a court under 42 U.S.C. § 1983. *Id.* at 76. Moreover, these traits are shared by the "administrative analog of a consent decree," which still bears the necessary "administrative *imprimatur*." *Id.* at 77 (concluding that "administrative consent decrees" incorporating the terms of the parties' agreement changed the parties' legal relationship and were enforceable).[2]

---

[1] Other courts of appeals have adopted *A.R.*'s framework or explained its consistency with prior circuit precedent. *See El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 423 n.4 (5th Cir. 2009) (explaining *A.R.*'s consistency with pre-*Buckhannon* decisions holding that "success at an administrative proceeding entitles a party to attorney's fees"); *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 854 (3d Cir. 2006) (adopting *A.R.*'s "administrative imprimatur").

[2] Though decided before *A.R.*, *Abraham v. District of Columbia*, 338 F. Supp. 2d 113 (D.D.C. 2004) essentially adopts the same approach, reasoning that a hearing officer's

Applying the above principles, the Court readily concludes that, on the undisputed summary judgment record, Plaintiffs are "prevailing part[ies]" entitled to an award of attorney's fees. 20 U.S.C. § 1415(i)(3)(B)(i)(I).[3]

All three factors under *Straus*, adapted to the administrative context through *A.R.*'s "administrative imprimatur" rubric, are amply satisfied here. *See Straus*, 590 F.3d at 901; *A.R.*, 407 F.3d at 76–77. First, the administrative proceedings effected a "change in the legal relationship of the parties." *Straus*, 590 F.3d at 901. This case does not involve a mere "[p]rivate settlemen[t]," *Buckhannon*, 532 U.S. at 604 n.7, after which the impartial hearing officer did "no more than dismiss" the case, *see A.R.*, 407 F.3d at 78. Rather, the "terms of the [parties'] agreement are incorporated" into the consent order. *Buckhannon*, 532 U.S. at 604 n.7; *see also A.R.*, 407 F.3d at 78; Consent Order 2–3, Pls.' Ex. 2. Moreover, the consent order was "in favor of" Plaintiffs and accorded them concrete "relief." *Straus*, 590 F.3d at 901. Specifically, the order directs DCPS "to restore the quantities of specialized instruction and related services" in a manner largely consistent with the due process complaint. Consent Order 2, Pls.' Ex. 2.

The District, however, contends that the language and structure of the consent order lack specific indicia of any change in the parties' relationship, relying on *Thompson v. District of Columbia*, No. 12-cv-103, Report & Recommendation, ECF No. 28 (July 1, 2013). The

---

determination incorporating a settlement agreement and ordering the defendant to "undertake or refrain from some conduct consistent with" the IDEA, *id.* at 120 n.8, "is analogous to a consent decree in a civil action," *id.* at 120.

[3] The IDEA provides for an award of fees to "a prevailing party *who is the parent* of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I) (emphasis added). Here, the District does not contend that even if Z.A. were found to be a prevailing party, he would not be entitled to fees because he is not a "parent of a child with a disability." *Id.* Accordingly, the Court declines to address the issue and considers only whether Plaintiffs "prevail[ed]" in the administrative proceedings. *Id.*

*Thompson* court denied prevailing party status where a consent order merely documented the parties' agreement without any findings of fact, conclusions of law, or provisions for "future oversight" or rights of appeal, and was entitled "Consent Order" rather than "Hearing Officer Determination." *Id.* at 53.  By contrast, the court found prevailing party status on the basis of another consent order's inclusion of an appeal rights provision, jurisdictional statement, and separate "orders" for each item of relief.  *Id.* at 56–57.  This Court, however, declines to adopt such a formalistic approach, which risks imbuing formatting and stylistic choices with undue legal significance.[4]

The District further contends that the consent order "granted Plaintiffs *no* relief on any claim." Def.'s Cross-Mot. Summ. J. & Opp'n 6.  Although the import of this assertion is unclear, the Court understands the District to mean that the *de minimis* relief obtained by Plaintiffs forecloses a finding of prevailing party status. *See Bush ex rel. A.H. v. District of Columbia*, 579 F. Supp. 2d 22, 33 (D.D.C. 2008) (concluding that obtaining partial relief for one of nineteen requests for relief was *de minimis* relief); *Genrette v. Options Pub. Charter Sch.*, 926 F. Supp. 2d 364, 367 (D.D.C. 2013) (concluding that order directing defendant to conduct a functional behavioral assessment was *de minimis* relief, where the hearing officer denied requests for private placement and compensatory education).  Here, to be sure, the consent order granted only one of the fourteen requested items of relief—the IEP revision.  And even then, the consent order mandated only 12.5 hours per week of specialized instruction, not the 20 hours requested. *Compare* Admin. Due Process Compl. 7–9, Pls.' Ex. 1, *with* Consent Order 2–3, Pls.' Ex. 2.  Nonetheless, the Court declines to quantify the relief obtained in such mechanical

---

[4] Although this Court adopted this portion of Magistrate Judge Kay's report and recommendation in *Thompson*, the Court had no occasion to consider the prevailing party analysis given the absence of any objection from the parties. *See* Order Adopting in Part the Magistrate Judge's Report and Recommendation, No. 12-cv-103, ECF No. 32 (July 24, 2013).

fashion; because the IEP revision was the primary relief sought by Plaintiffs, their substantial success in obtaining such relief was far from *de minimis*.  Moreover, "the degree of the plaintiff's success" bears on "the size of a reasonable fee, not [the] eligibility for a fee award at all."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989); *accord McAllister*, 21 F. Supp. 3d at 101 (D.D.C. 2014); *see also Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained.").[5]

The Court accordingly holds that because the consent order effected a "change in the legal relationship of the parties," favored Plaintiffs, and offered them relief, Plaintiffs were "prevailing part[ies]" entitled to recover reasonable attorneys' fees under the IDEA.  20 U.S.C. § 1415(i)(3)(B)(i)(I); *see also Straus*, 590 F.3d at 901.

### C.  Reasonableness of Fees Requested

The parties further dispute whether the fees requested by Plaintiffs are "reasonable" under the IDEA.  20 U.S.C. § 1415(i)(3)(B)(i)(I); *see also* Mem. Supp. Pls.' Mot. Summ. J. 8–12; Def.'s Cross-Mot. Summ. J. & Opp'n 9–13.  For the reasons given below, the Court concludes that they are.

A "reasonable fee" is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424,

---

[5] In discussing the applicable law, the District cites *M.M. ex rel. Matthews v. Gov't of D.C.*, 607 F. Supp. 2d 168 (D.D.C. 2009), for the proposition that "pronouncements in an HOD requiring the school system to merely fulfill its obligations under IDEA, without more, are insufficient to confer prevailing party status."  Def.'s Cross-Mot. Summ. J. & Opp'n 7.  The Court does not read *M.M.* to stand for such a dubious proposition.  *See P.N.*, 442 F.3d at 856 (rejecting the view that "plaintiffs must establish a new right or expand the requirements of the IDEA in order to obtain attorneys' fees").  In any event, because the District nowhere contends that its reading of *M.M.* actually governs the facts of this case, the Court will not consider the issue.

433 (1983). The plaintiff bears the burden of showing that both of these figures are reasonable, *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995), by proffering evidence of the attorneys' billing practices, skill, experience, and reputation, as well as the prevailing market rates in the relevant community, *see McAllister*, 21 F. Supp. 3d at 100. If the plaintiff carries this burden, then the number of hours billed and the attorneys' hourly rates are deemed reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing. *See Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010).

Here, Plaintiffs have provided a detailed invoice that explains the hours billed, hourly rates, and tasks performed for two attorneys and two paralegals in connection with Arthur and Z.A.'s administrative proceedings. *See* Invoice, Pls.' Ex. 3, ECF No. 8-2.[6] The invoice uses hourly rates that are 75% of the *Laffey* rates. *See Laffey* Matrix, Pls.' Ex. 7, ECF No. 8-3.[7] Plaintiffs have also submitted statements from their attorneys explaining their experience and education, along with resumes from the paralegals who assisted with the case. *See* Polo Verified Statement, Pls.' Ex. 4, ECF No. 8-3; Hassan Verified Statement, Pls.' Ex. 5, ECF No. 8-3; Resumes, Pls.' Ex. 6, ECF No. 8-3.

In its cross-motion and opposition, the District takes no issue with the number of hours billed and disputes the hourly rates in only one respect: The District claims that because Ms. Polo was admitted to the District of Columbia bar only in 2012, her rates should correspond to the *Laffey* rates for an attorney with 1–3 years of experience, not 4–7 years of experience. *See* Def.'s Cross-Mot. Summ. J. & Opp'n 13. But as Plaintiffs explain, the District overlooks the

---

[6] In addition, the invoice also details services provided by another individual with initials "MCL," whose time was not charged. *See* Invoice, Pls.' Ex. 3.

[7] The *Laffey* Matrix details hourly rates for attorneys and paralegals of varying experience levels and is prepared for use in fee calculations by the Civil Division of the United States Attorney's Office for the District of Columbia.

fact that Ms. Polo was admitted to the Florida bar in 2009.  *See* Polo Verified Statement ¶ 5, Pls.' Ex. 4; Florida Bar Online Profile, Pls.' Reply Ex. 3, ECF No. 12-1.  Because the District offers no response, it has failed to create a genuine dispute of material fact (let alone show that it is entitled to judgment as a matter of law).  *See generally* Def.'s Reply, ECF No. 13.[8]

The Court pauses to note one discrepancy: The invoice proffered by Plaintiffs is based on the 2012–13 *Laffey* rates, despite the fact that the attorneys' work occurred between September 2013 and February 2014 and thus should warrant application of the higher 2013–14 rates.  *See* Invoice, Pls.' Ex. 3; *Laffey* Matrix, Pls.' Ex. 7 (explaining that 2013–14 rate applies for period between June 1, 2013, and May 31, 2014).  Because Plaintiffs offer no explanation or record evidence to resolve the discrepancy, the Court declines to revise the figures upward.  *See Celotex*, 477 U.S. at 323 (explaining movant's initial responsibility of "identifying those portions of" the record evidence demonstrating an absence of a genuine dispute of material fact).  Accordingly, the Court will rely on the total invoice figure of $17,781.62, which is based on the 2012–13 *Laffey* rates.[9]

Lastly, Plaintiffs seek $90.62 in costs associated with postage, letters, photocopies, and faxes related to the attorneys' services.  *See* Invoice, Pls.' Ex. 3.  The District has not challenged

---

[8] Like Plaintiffs, the Court is confused by the District's assertion that "Plaintiffs advocate for the *Laffey* matrix rate for both counsel and her paralegal."  Def.'s Cross-Mot. Summ. J. & Opp'n 9.  Plaintiffs' filings plainly demonstrate that they seek only 75% of the *Laffey* rates for counsel and paralegals.  *See* Mem. Supp. Pls.' Mot. Summ. J. 10; Pls.' Reply 7; Invoice, Pls.' Ex. 3.  And given that the District concedes that 75% of the *Laffey* rate is reasonable, the Court concludes that the District has lodged no general objection to the reasonableness of the hourly rates provided in Plaintiffs' filings beyond its quibbles with Ms. Polo's years of experience.  *See* Def.'s Cross-Mot. Summ. J. & Opp'n 12 n.1 (citing cases awarding "three-quarters (3/4) of *Laffey* or less").

[9] In their motion for summary judgment, Plaintiffs assert that Ms. Polo alone is entitled to the 2013–14 *Laffey* rate, of which 75% would amount to $221.75.  *See* Mem. Supp. Pls.' Mot. Summ. J. 10.  This assertion, however, finds no support in their invoice, which uses an hourly rate of $217.50, or 75% of the 2012–13 *Laffey* rate.  *See* Invoice, Pls.' Ex. 3.

the reasonableness of this figure, and the Court accordingly awards these costs as well. *See Briggs v. District of Columbia*, No. 14-cv-0002, 2014 WL 5860358, at *4 (D.D.C. Nov. 12, 2014) (awarding costs for mileage, parking, and postage); *McClam v. District of Columbia*, 808 F. Supp. 2d 184, 190–91 (D.D.C. 2011) (awarding costs for copying, faxing, and mileage).

The Court concludes that Plaintiffs have demonstrated the reasonableness of the hours billed by their attorneys and paralegals, their hourly rates, and other miscellaneous costs. *See In re North*, 59 F.3d at 189. The District, moreover, has not carried its burden to rebut this showing. *See Blackman*, 677 F. Supp. 2d at 172. Accordingly, the District shall be liable to Plaintiffs for $17,872.24 in reasonable attorneys' fees.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 8) is **GRANTED**, and Defendant's cross-motion for summary judgment (ECF No. 10) is **DENIED**. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  May 28, 2015                                                                         RUDOLPH CONTRERAS
                                                                                                                 United States District Judge